1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

8

**DISTRICT OF NEVADA**

9

10  UNITED STATES OF AMERICA,                    )

11                                    Plaintiff,    )        Case No.   2:06-cr-00379-LDG-GWF

12  vs.                                                )        **FINDINGS & RECOMMENDATIONS**
                                                        )        **AND ORDER DENYING *FRANKS***
13  ROBERT MYRON LATHAM,              )        **HEARING**
                                                        )
14                                    Defendant.   )
    _____ )

15

16          This matter is before the Court on Defendant Robert Myron Latham's Motion to Suppress

17  Evidence (<u>Franks</u> Hearing Requested to Determine Whether Application for the Search Warrant Was

18  Misleading) (#50), filed on October 9, 2007; the Government's Response to Defendant's Motion to

19  Suppress Physical Evidence (#53), filed on October 19, 2007; and Defendant's Reply to United States'

20  Response to Defendant's Motion to Suppress (#55), filed on October 25, 2007.

21          Defendant Robert Myron Latham is charged in a three count Indictment, filed on November 15,

22  2006, with transporting child pornography, receipt of child pornography and possession of child

23  pornography in violation of 18 U.S.C. § 2252A(a)(1) (2) and (5)(B).  Defendant argues that evidence

24  seized from his computer pursuant to a search warrant should be suppressed because the affidavit in

25  support of the search warrant contained material misstatements or omissions of fact.  Defendant argues

26  that if the complete facts had been included, probable cause would not have existed to support the

27  issuance of the warrant.  Defendant requests that the Court conduct a *Franks* evidentiary hearing to

28  determine whether the alleged false statements or omissions in the affidavit were intentional or made

1 with reckless disregard for the truth, and if so, that the evidence seized pursuant to the warrant be

2 suppressed.

3 **FACTUAL BACKGROUND**

4      On June 1, 2005, the Government applied to United States Magistrate Judge Lawrence R. Leavitt

5 for a warrant to search the premises at 6420 East Tropicana Avenue, Unit 164, Las Vegas, Nevada and

6 any computers located therein for evidence of child pornography as defined in 18 U.S.C. § 2256. *See*

7 *Defendant's Motion To Suppress (#50), Exhibit "B", Attachment B*. According to the affidavit in

8 support of the search warrant, a "growing phenomenon" on the Internet is "peer to peer" file sharing

9 (P2P), which is a method of communication available to Internet users through the use of special

10 software. *Id., Exhibit "B", Affidavit*, ¶ 14. As explained in the affidavit:

> Computers linked together through the Internet using this software form a
> network that allows for the sharing of digital files between users on the
> network. A user first obtains the P2P software, which can be downloaded
> from the Internet. In general, P2P software allows the user to set up file(s)
> on a computer to be shared with others running compatible P2P software.
> A user obtains files by opening the P2P software on the user's computer,
> and conducting a search for files that are currently being shared on the
> network. Limewire, one type of P2P software, sets up its searches by
> keyword. The results of the keyword search are displayed to the user. The
> user then selects file(s) from the results for download. The download of
> the file is achieved through a direct connection between the computer
> requesting the file and the computer containing the file. *Id.,* ¶ 14.

18      As further explained in the affidavit, a person interested in obtaining child pornographic images

19 would open the P2P application on his computer and conduct a search for files by using a selected search

20 term. The search is then sent out over the network of computers running compatible P2P software such

21 as Limewire. The results of the search are returned to the user's computer and displayed. The user then

22 selects which files he wants to download, which are then directly downloaded from the computer hosting

23 the file to the area previously designated by the user for storage in his computer. *Id.,* ¶ 15. The affidavit

24 also stated that a P2P file transfer is assisted by reference to an Internet Protocol (IP) address which is

25 unique to a particular computer during an online session.[1] The IP address provides a unique location

---

[1] The affidavit also provides a general definition of "Internet Protocol address" or "IP address". *See Affidavit* ¶ 5.h.

2

1    making it possible for data to be transferred between computers. *Id.,* ¶ 17.

2           According to the affidavit, on February 25, 2005, FBI Special Agent (SA) Gordon, using an

3    internet connected computer, launched the P2P Limewire program and conducted a keyword search

4    using the term "r@gold" which is commonly found in the file names of child pornography images on file

5    sharing networks.  The result of the search identified 19 matching files which could be viewed and

6    downloaded from the computer using the IP address 68.224.236.152.  SA Gordon made a screen capture

7    which displayed the name of these files, eight of which he determined had names indicative of child

8    pornography.  SA Gordon then used the Limewire "browse" function to view the names of

9    approximately 270 image files stored in the share folder of the computer using the IP address

10   68.224.236.152.  A review of the names of these files revealed that more than half of them had names

11   indicative of child pornography.  *Id.,* ¶ 23.  SA Gordon then downloaded four image files from the

12   computer using IP address  68.224.236.152, all of which contained images of child pornography.   SA

13   Gordon also attempted to download a fifth image, but more than half of that image was received from a

14   different computer with a different IP address.  *Id.,* ¶ 24.  The four images downloaded by SA Gordon all

15   contained depictions of child pornography as described in paragraph 25 of the affidavit.  During the

16   downloading process, the Limewire program displayed the source  IP address of each image as

17   68.224.236.152.  SA Gordon also used a software program called CommView which monitors internet

18   and local network traffic and allows the user to view detailed IP address connections. This program also

19   showed that the four images of child pornography were downloaded from the IP address

20   68.224.236.152.  *Id.,* ¶ 26.

21          Pursuant to a search of the American Registry for Internet Numbers (ARIN), the Government

22   determined that the IP address 68.224.236.152 is registered to Internet Service Provider (ISP) Cox

23   Communications.  The Government served an administrative subpoena on Cox Communications for

24   subscriber information to IP address  68.224.236.152 during the time period that SA Gordon

25   downloaded the images on February 25, 2005.  Cox Communications' response to the subpoena listed IP

26   address  68.224.236.152 as being used by the account of Larry Latham.  According to the affidavit, Cox

27   listed Latham's address as 6420 East Tropicana Avenue, Unit 164, Las Vegas, Nevada 89122 and also

28   provided his telephone number and social security number.  *Id.,* ¶ 27.  Through checks of other public

1   data bases, phone company records and Nevada Department of Motor Vehicle records, the Government

2   obtained additional information confirming that Larry Latham resided at 6420 East Tropicana Avenue,

3   Unit 164. *Id., ¶¶* 28-30.  On May 20, 2005, the Government again confirmed with Cox

4   Communications by telephone that IP address  68.224.236.152 was assigned to Larry Latham's account

5   from January 23, 2005 through May 20, 2005. *Id., ¶* 31.  The affidavit further stated that physical

6   surveillance of the residence, which is located in a mobile home park, was conducted on May 23, 2005,

7   and a pick-up truck registered to Sherryl E. Carroll-Latham and a sedan registered to Larry Latham were

8   observed at the residence. *Id., ¶* 32.  Based on the foregoing information, Magistrate Judge Leavitt

9   issued a search warrant on June 1, 2005 authorizing the Government to search the premises at 6420 East

10  Tropicana Avenue, Unit 164, Las Vegas, Nevada 89122 and to search any computers and associated

11  storage devices found on the premises for images of child pornography.

12          According to the Government, federal agents executed the search warrant on June 1, 2005.

13  Investigation at the scene revealed that the residence was occupied by Larry Latham, his brother

14  Defendant Robert Latham, and Sherryl Carroll.  Pursuant to the search warrant, agents seized and

15  searched two desk top computers belonging to Larry Latham and Sherryl Carroll.  According to the

16  Government, these computers did not contain contraband.  The federal agents also seized and searched a

17  laptop computer located in the residence which belonged to Defendant Robert Latham.  A forensic

18  examination of this computer revealed a large number of child pornographic images, many of which

19  were saved in well-organized folders labeled by name or category. *See Government's Response (#53)*,

20  page 6.

21          Defendant argues that the affidavit in support of the search warrant omitted important

22  information about IP addresses and how they relate to computers that may use an IP address at any given

23  point in time.  Defendant argues that if complete information had been provided in the affidavit, there

24  would have been insufficient basis for the court to find probable cause that child pornography would be

25  found on a computer located in the residence at 6420 East Tropicana Avenue, Unit 164, Las Vegas,

26  Nevada 89122.  In support of his Motion, Defendant has attached an affidavit by Adrian Mare, an expert

27  in computer networking, computer forensics and electronic discovery. *Defendant's Motion to Suppress

28  (#50), Exhibit "A"*.  Mr. Mare's affidavit makes the following points:

\*        Computers access the internet through connections or portals.  Each of these portals or connections is assigned its own Internet Protocol (IP) address.  Each time a computer accesses the internet, it is assigned an IP address;

\*        One way a computer user can gain access to an IP address is to become a subscriber to an Internet Service Provider (ISP), such as Cox Communications.  Upon becoming a subscriber, the computer user is permitted to connect to the ISP's network by physically attaching a connecting device, a cable modem, to cables located in their residence or business.

\*        In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connected to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address.  The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address.  The wireless router signal strength could be increased beyond 600 feet if additional devices are added.  The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass this security using publicly available software.

\*        There is publicly available software on the internet which permits a computer to "spoof" or fake an IP address in another network.  Through this software an individual can make it appear that he is using a specific router when he is, in fact, using a different router.  Thus, when this person sends a message or information to another computer, the receiving computer will be unaware of the true IP address of the sending computer.

\*        There is also publicly available software which permits a computer to "spoof" or fake the media access control (MAC) number of the computer, modem or router, which would prevent the ISP, such as Cox Communication, from knowing who is actually using its network to access the internet.

Defendant has also provided an affidavit by Al Tobin, an investigator for the Federal Public Defender's Officer, who states that he has spoken to April Lindskog, the same representative of Cox Communications that the FBI agent spoke to on May 20, 2005.  According to Mr. Tobin, Ms. Lindskog advised that Cox tracks its subscribers' internet network use based on the MAC addresses of the cable modem associated with the account and "that a cable modem registered for an account could connect to Cox anywhere that Cox provided service and that a customer's access to Cox was not limited by geographic location or address."  *Motion (#50), Exhibit "C", Tobin Affidavit.*  Mr. Tobin's affidavit also states that based on his personal observation, there are approximately sixty homes located within a 600 foot radius of the premises at 6420 East Tropicana Avenue, Unit 164, Las Vegas, Nevada.

## DISCUSSION

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court held that the Fourth Amendment entitles a defendant to challenge the validity of a search warrant

affidavit if the defendant makes a substantial preliminary showing that (1) the affidavit contains

intentionally or recklessly false statements and (2) the affidavit purged of its falsities would not be

sufficient to support a finding of probable cause.  *See United States v. Martinez-Garcia*, 397 F.3d 1205,

1215 (9th Cir. 2005), *citing United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).  In making the

initial determination whether a defendant is entitled to an evidentiary hearing, *Franks* states:

> There is, of course, a presumption of validity with respect to the affidavit
> supporting the search warrant.  To mandate an evidentiary hearing, the
> challenger's attack must be more than conclusory and must be supported
> by more than a mere desire to cross-examine.  There must be allegations of
> deliberate falsehood or of reckless disregard for the truth, and those
> allegations must be accompanied by an offer of proof.  They should point
> out specifically the portion of the warrant affidavit that is claimed to be
> false; and they should be accompanied by a statement of supporting
> reasons.  Affidavits or sworn or otherwise reliable statements of witnesses
> should be furnished or their absence satisfactorily explained.  Allegations
> of negligence or innocent mistake are insufficient.

 438 U.S. at 171.

   *Franks* further stated that if the defendant makes a substantial showing that the affidavit contains

intentionally or recklessly false statements, "and if, when the material that is the subject of the alleged

falsity is set to one side, there remains sufficient content in the warrant affidavit to support a finding of

probable cause, no hearing is required."  *Id.,* at 171-172.  On the other hand, if the remaining content is

insufficient to support probable cause, then the defendant is entitled to an evidentiary hearing.  *Id.*  At

such hearing, the defendant has the burden of proof by a preponderance of the evidence to establish that

the false statements were deliberately made or were made with a reckless disregard for the truth.  *United*

*States v. DeLeon*, 955 F.2d 1346, 1348 (9th Cir. 1992).

   As the Ninth Circuit recently reiterated in *United States v. Jawara*, 474 F.3d 565 (9th Cir. 2007),

intentional or reckless omissions may also provide grounds for a *Franks* hearing.   The Court stated:

> "A search warrant, to be valid, must be supported by an affidavit
> establishing probable cause."  *United States v. Stanert,* 762 F.2d 775, 778
> (9th Cir.1985).   In *Stanert,* we applied the rationale of *Franks v.*
> *Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to hold
> that a defendant could challenge a facially valid affidavit by making a
> substantial preliminary showing that "the affiant intentionally or recklessly
> omitted facts required to prevent technically true statements in the
> affidavit from being misleading."  *Stanert,* 762 F.2d at 781 ("By reporting
> less than the total story, an affiant can manipulate the inferences a
> magistrate will draw.   To allow a magistrate to be misled in such a
> manner could denude the probable cause requirement of all real

6

1 meaning.")   In addition, the defendant must show that the "affidavit, once
2 corrected and supplemented," would not "provide ... a substantial basis for
concluding that probable cause existed" to search defendant's residence.
3 *Id.* at 782.

4      *Stanert* also states that in determining whether a defendant is entitled to an evidentiary hearing,

5 "[c]lear proof of deliberate or reckless omission is not required.  *See United States v. Chesner*, 678 F.2d

6 1353, 1362 (9th Cir. 1982).  Such proof is reserved for the evidentiary hearing."  762 F.2d at 781.  The

7 search warrant affidavit in *Stanert* alleged that defendant's residence was being used as an illegal drug

8 laboratory.  The court found that defendant had made a substantial preliminary showing that the affidavit

9 omitted material information regarding each of the key facts relied on by the government to support

10 probable cause and that the nature of the omissions suggested that they were made intentionally or at

11 least recklessly.  Probably the most glaring example was the affiant's statement that an illicit drug lab

12 had previously exploded at the residence.  The affidavit did not inform the issuing judge, however, that

13 defendant did not purchase or move into the residence until after that explosion.  The court also held that

14 if the omitted information had been included in the affidavit, there would not have been a substantial

15 basis upon which to find probable cause.  Defendant was therefore entitled to a *Franks* hearing to

16 determine whether the officer's omissions were intended to deceive the issuing judge or were made with

17 reckless disregard for the truth.

18      As *Stanert* indicates, the materiality of the omitted information in regard to probable cause is

19 relevant to the defendant's initial preliminary showing that the omissions were made intentionally or

20 recklessly.  The Seventh Circuit has stated that Defendant "must offer direct evidence of the affiant's

21 state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to

22 prove deliberate falsehood or reckless disregard."  *United States v. Souffront*, 338 F.3d 809, 822-23 (7th

23 Cir. 2003).  In this latter regard, the nature of the omitted facts must be such that it is reasonable to infer

24 that they were deliberately or intentionally omitted from the affidavit.  *See e.g. Stanert, supra,* (advising

25 judge about previous drug lab explosion, but failing to disclose that it occurred before the defendant

26 owned or resided on the premises indicated at least a reckless disregard for the truth.)  In this case, the

27 Government's search warrant affidavit provides a fairly detailed description of the means and methods

28 by which persons use the internet and peer-to-peer programs to exchange and download images of child

7

1    pornography.  It is reasonable to infer that the FBI agents who prepared or assisted in preparing the

2    search warrant affidavit understand how IP addresses function and the extent to which IP addresses

3    indicate where a particular computer is located.  The issue before the Court, therefore, is whether the

4    alleged omissions here would have defeated probable cause had they been included in the affidavit and,

5    if so, whether they sufficiently evidence deliberate falsehood or reckless disregard for the truth.

6         In *United States v. Kelley*, 482 F.3d 1047, 1050-51 (9th Cir. 2007), the Ninth Circuit recently

7    reiterated the standards for determining probable cause as spelled out in *Illinois v. Gates,* 462 U.S. 213,

8    103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  The court noted that these standards apply with equal force to

9    cases involving child pornography on a computer.  *United States v. Gourde,* 440 F.3d 1065, 1069 (9th

10   Cir. 2006) (en banc).  *Kelley* states:

11              Thus, probable cause means a "fair probability" that contraband or
             evidence is located in a particular place.  *Gates*  462 U.S. at 246, 103 S.Ct.
12           2317;  *Gourde,* 440 F.3d at 1069.  Whether there is a fair probability
             depends upon the totality of the circumstances, including reasonable
13           inferences, and is a "commonsense, practical question."  *Gourde,* 440 F.3d
             at 1069 (citing and quoting *Gates,* 462 U.S. at 230, 246, 103 S.Ct. 2317).
14           Neither certainty nor a preponderance of the evidence is required.  *Id.*
             (citing *Gates,* 462 U.S. at 246, 103 S.Ct. 2317).
15
             Normally, we do not "flyspeck" the affidavit supporting a search warrant
16           through de novo review;  rather, the magistrate judge's determination
             "'should be paid great deference.'"  *Gourde,* 440 F.3d at 1069 (quoting
17           *Gates,* 462 U.S. at 236, 103 S.Ct. 2317 (quoting *Spinelli v. United States,*
             393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)).  In addition, the
18           Supreme Court has reminded reviewing courts that "[a]lthough in a
             particular case it may not be easy to determine when an affidavit
19           demonstrates the existence of probable cause, resolution of doubtful or
             marginal cases in this area should largely be determined by the preference
20           to be accorded to warrants."  *Gates,* 462 U.S. at 237 n. 10, 103 S.Ct. 2317
             (quoting *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 13
21           L.Ed.2d 684 (1965)).

22        In *United States v. Gourde,* 440 F.3d 1065, 1069 (9th Cir.2006) (*en banc*), the government

23   obtained a warrant to search defendant's residence and personal computer for child pornography based

24   on information in the affidavit that defendant had subscribed to and remained a member of an internet

25   website which charged a monthly fee, and which advertised and allowed members to view and download

26   both legal pornography and illegal child pornography.  The affidavit also discussed the characteristics of

27   persons who collect child pornography, including their general habits in retaining child pornography on

28   their computers or elsewhere in their residences. The *en banc* majority held that the affidavit provided a

1   fair probability that defendant had downloaded child pornography from the website and retained it in his

2   possession at the time the warrant was issued.  The majority therefore held that the search warrant was

3   supported by probable cause.  Relying on *Gourde*, the court in *Kelley* similarly held that the

4   government's affidavit provided sufficient evidence to provide probable cause to believe that defendant

5   had knowingly received and possessed email communications with attachments containing child

6   pornography images.

7        In this case, Defendant Latham does not dispute that there was probable cause to believe that the

8   user of the computer from which SA Gordon downloaded child pornographic images on February 25,

9   2005 knowingly possessed such images on his or her computer and/or transferred images to others

10   through the Limewire peer-to-peer program.  Defendant Latham argues, however, that the alleged

11   omissions in the affidavit were intentional or reckless because (1) the Cox internet computer connection

12   to which Larry Latham was the subscriber could have been located at premises other than the address

13   shown on the Cox Communication billing records; (2) computer users outside Mr. Latham's residence

14   could have connected to the internet under IP address 68.224.236.152 by accessing the wireless router

15   and modem in Latham's residence; or (3) that it was possible for other computer users, using different IP

16   addresses, to "spoof" or fake the IP address assigned to Larry Latham and make it appear that their

17   internet connections were through the IP address assigned to him.  Defendant argues that these facts

18   should have been included in the affidavit and would have shown that there was not a sufficient basis for

19   probable cause to believe that the computer from which Agent Gordon downloaded child pornographic

20   images on February 25, 2005 was located in Larry Latham's residence.

21        Before discussing these allegations, the Court addresses Defendant's argument in his Reply (#55)

22   that the Court may not deny a *Franks* evidentiary hearing based on the factual assertions made by the

23   Government in its Response (#53) regarding Special Agent Gruninger's or FBI headquarters' lack of

24   knowledge whether an IP address can be spoofed.  The Court agrees that if Defendant has made a

25   substantial preliminary showing under *Franks*, the Court may not deny an evidentiary hearing based on

26   the Government's contrary factual assertions which are not based on information set forth in the search

27   warrant affidavit itself.  As *United States v. Mejia*, 69 F.3d 309, 318 (9th Cir. 1995) states, the district

28   court is required to conduct an evidentiary hearing when the moving papers filed in connection with a

1    pre-trial suppression motion show that there are contested issues of fact relating to the lawfulness of a

2    search.  The Government's representations regarding Special Agent Gruninger's or the FBI's knowledge

3    of whether it is possible to "spoof" an IP address are more properly addressed in an evidentiary hearing

4    if the Court otherwise determines that Defendant is entitled to one.  The Government has also not

5    submitted any affidavits to support the additional factual assertions made in its Response (#53).  For that

6    additional reason,  it would also be improper for the Court to consider those factual assertions as grounds

7    for denying a *Franks* hearing if Defendant has otherwise met the substantial preliminary threshold.  If

8    the Court grants an evidentiary hearing, then the Government will, of course, be entitled to present

9    evidence at the hearing to rebut Defendant's assertions.

10          The Court first addresses Defendant's argument that Larry Latham's address listed in the Cox

11   Communications subscriber records was not necessarily the address where the Cox internet

12   communication equipment was located. The search warrant affidavit states that in response to an

13   administrative subpoena for the subscriber information for IP address 68.224.236.152, Cox

14   Communications identified Larry Latham as the subscriber and listed his address as 6420 East Tropicana

15   Avenue, Unit 164.  Cox also provided Mr. Latham's telephone number and social security number.

16   *Affidavit,* ¶ 27.  The affidavit also states that on May 20, 2005, Agent Gruninger confirmed with a Cox

17   representative that IP address 68.224.236.152 was assigned to Mr. Latham on February 25, 2005 when

18   Special Agent Gordon downloaded the child pornography from a computer using that IP address.  *Id.,* ¶

19   31.  Defendant has not shown that these statements were untrue.

20          The affidavit also states that online checks of public information data bases identified Larry

21   Latham as Lawrence E. Latham with the foregoing address and that telephone service was provided to

22   Mr. Latham at that address.  *Id.,* ¶¶ 28-29.  In addition, the Nevada Department of Motor Vehicles listed

23   6420 East Tropicana Avenue, Unit 164 as Mr. Latham's address on his expired driver's license and also

24   showed that he had a motor vehicle registered in his name at that address.  *Id.,* ¶ 30.  On May 23, 2005,

25   the agents conducted physical surveillance at 6420 East Tropicana Avenue, Unit 164, identified it as a

26   residential premises and observed Mr. Latham's vehicle parked in a common area across from the

27   residence.  The agents also observed a vehicle registered to Sherryl E. Carroll-Latham at the same

28   address, parked in the carport of the residence.  *Id.,* ¶ 32.  The information provided in the search

1    warrant affidavit therefore indicated that Larry Latham resided at 6420 East Tropicana Avenue, Unit 164

2    and that it was not merely a billing address.  Absent other contrary information, it is also reasonable to

3    infer that Larry Latham's Cox internet communication service would be located at that residence.

4           According to the affidavit of Defendant's computer expert, Mr. Mare, when an entity becomes a

5    subscriber or client to an Internet Service Provider (ISP), they are permitted to connect to the ISP's

6    network by physically attaching a connecting device, i.e., a cable modem, to cables in their residence or

7    place of business.  *Motion (#50), Exhibit "A"*, ¶ 6.  Mr. Mare also states that the IP address is actually

8    assigned to the cable modem or router used by the subscriber.  *Id.*, ¶ 9.  According to the affidavit of

9    Defendant's investigator, Mr. Tobin, regarding his conversation with former Cox employee, Ms.

10   Lindskog, she explained that a modem registered for an account with Cox could connect with Cox

11   anywhere that Cox provided service.  *Motion (#50), Exhibit "C"*, ¶ 5.  Although the affidavit regarding

12   Ms. Lindskog's statements is hearsay and somewhat vague, it appears that Defendant is contending that

13   Larry Latham or someone else with access to his cable modem could have connected the modem to the

14   Cox system at a location other than Mr. Latham's residence.  Assuming that this information is true and

15   had been included in the search warrant affidavit, however, it does not eliminate the likelihood or fair

16   probability that Mr. Latham or another person using his assigned cable modem would do so from the

17   premises at 6420 East Tropicana Avenue, Unit 164, Las Vegas, Nevada.

18          Second, Defendant argues that there was insufficient evidence to believe that the computer from

19   which child pornographic images were downloaded on February 25, 2005 was located in Mr. Latham's

20   residence because it was possible for multiple computers users located within 300 or 600 feet of that

21   residence to connect to the internet through a wireless router and modem located in Mr. Latham's

22   residence.  According to Defendant, any computer which connected to the internet through Mr. Latham's

23   Cox Communication connection would be identified under IP address 68.224.236.152.  Defendant

24   argues that if this information had been included in the affidavit, probable cause would have been

25   lacking and this supports the inference that the omissions were intentional or reckless.

26          The Fifth Circuit in *United States v. Perez*, 484 F.3d 735 (5th Cir. 2007), rejected this argument

27   as sufficient to defeat probable cause.   In *Perez*, a woman complained to the police that someone with

28   the Yahoo ID "famcple" sent her an internet message containing child pornography.  The police

1    forwarded the complaint to the FBI.  Through a subpoena to Yahoo!, Inc. the FBI determined that on the

2    dates the child pornography was transmitted, the computer used IP address 24.27.21.6.  The FBI

3    determined that this IP address was owned by Time Warner Cable and, through a subpoena to Time

4    Warner, learned that the IP address was assigned to defendant.  Based on this information, the FBI

5    obtained a search warrant to search defendant's residence.  Defendant argued that the "mere association

6    between an IP address and physical address is insufficient to establish probable cause."  In rejecting this

7    argument, the Court stated:

8              In this case it is clear that there was a substantial basis to conclude that
          evidence of criminal activity would be found at 7608 Scenic Brook Drive.
9          The affidavit presented to the magistrate included the information that the
          child pornography viewed by the witness in New York had been
10         transmitted over the IP address 24.27.21.6, and that this IP address was
          assigned to Javier Perez, residing at 7608 Scenic Brook Drive, Austin,
11         Texas 78736.  Perez argues that the association of an IP address with a
          physical address does not give rise to probable cause to search that
12         address.  He argues that if he "used an unsecure wireless connection, then
          neighbors would have been able to easily use [Perez's] internet access to
13         make the transmissions."  But though it was possible that the
          transmissions originated outside of the residence to which the IP address
14         was assigned, it remained likely that the source of the transmissions was
          inside that residence.  *See United States v. Grant,* 218 F.3d 72, 73 (1st
15         Cir. 2000) (stating that "even discounting for the possibility that an
          individual other than [defendant] may have been using his account, there
16         was a *fair probability* that [defendant] was the user and that evidence of
          the user's illegal activities would be found in [defendant's] home")
17         (emphasis in original).  "[P]robable cause does not require proof beyond a
          reasonable doubt."  *Brown,* 941 F.2d at 1302.

18

19         Perez also argues that evidence that illicit transmissions were made does
          not give rise to probable cause that physical evidence would be located at
20         the residence.  However, the New York witness stated that the images she
          observed appeared to be videos played on a television screen transmitted
21         via a web cam.  There was therefore a basis to believe that the suspect
          would have such videos in his residence.  Moreover, Britt stated in his
22         affidavit that, in his experience, persons interested in child pornography
          typically retain numerous images of child pornography as well as "material
23         documenting the arrangements, the introduction, and tasks to consummate
          the acquisition of child pornography."  Based on this information, there
24         was probable cause to believe that physical evidence of violations of the
          child pornography laws would be located at 7608 Scenic Brook Drive.

25   *Perez,* 484 F.3d at 740-41.

26         The affidavit in this case contains similar statements regarding the characteristics of persons who

27   engage in the collection and exchange of child pornography.  *See Motion (#50), Exhibit "A",* ¶¶ 6-13.

28         Defendant argues that there is an additional basis to question or doubt probable cause based on

12

1  the potential for "spoofing" of Mr. Latham's IP address.  Assuming that spoofing exists, this may be an

2  additional discounting factor regarding the probability that the computer from which Agent Gordon

3  downloaded child pornography on February 25, 2005 was located in Mr. Latham's residence.

4          The Court finds, however, that considering these factors separately or cumulatively, there still

5  remains a fair probability based on the information contained in the affidavit that evidence of child

6  pornography would be found on the premises at 6420 East Tropicana Avenue, Unit 164.  In this regard,

7  the evidence set forth in the affidavit sufficiently demonstrated that the computer from which the child

8  pornography was downloaded was identified by the IP address assigned to Larry Latham.  The

9  information provided by Cox Communication listed Mr. Latham's address, and other information

10  obtained by the Government and set forth in the affidavit identified that address as Mr. Latham's place

11  of residence.  The affidavit of Defendant's own computer expert indicates that cable modems are

12  connected to the cables that an internet provider such as Cox installs in the subscriber's residence or

13  place of business.  These circumstances therefore provided probable cause, i.e., a fair probability that the

14  computer from which the images were downloaded was located in Mr. Latham's residence.  This

15  evidence did not, of course, establish with certainty that the computer was located on those premises.  It

16  was possible that someone other than Larry Latham or a resident of his household had accessed the

17  internet either through his wireless router or by "spoofing" his address in order to engage in the

18  exchange of child pornography on the internet.  Probable cause under the Fourth Amendment, however,

19  does not require certainty or even proof by a preponderance that the evidence sought is located on the

20  premises to be searched.  *United States v. Gourde,* 440 F.3d at 1069.

21                                          **CONCLUSION**

22          The Court therefore concludes that if the affidavit for the search warrant in this case had included

23  the additional information that Defendant contends should have been included, probable cause would

24  still have existed that evidence of child pornography would be found on the premises.  The Court

25  therefore finds that Defendant has not made a substantial preliminary showing under the second prong of

26  the *Franks* test.  Because Defendant's argument that the omissions were intentional or reckless is

27  premised on the inference to be drawn from their materiality to the issue of probable cause, the Court

28  also finds that Defendant has not made a substantial preliminary showing that the omissions were made

                                             13

1    intentionally or with reckless disregard for the truth under the first prong of the *Franks* test.

2    Accordingly,

3                                   **RECOMMENDATION**

4          **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (#50) be

5    **denied.**

6          Based on this Recommendation, it is further ordered that Defendant's request for a *Franks*

7    evidentiary hearing is **denied**.

8                                       **NOTICE**

9          Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

10   writing and filed with the Clerk of the Court within ten (10) days.  The Supreme Court has held that the

11   courts of appeal may determine that an appeal has been waived due to the failure to file objections within

12   the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure

13   to file objections within the specified time and (2) failure to properly address and brief the objectionable

14   issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of

15   the District Court.  *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United*

16   *Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

17         DATED this 1st day of November, 2007.

18

19                                            *George Foley Jr.*

20                              GEORGE FOLEY, JR.
                               UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

                                            14