GREGORY A. BROWER
United States Attorney
NANCY J. KOPPE
ROBERT L. ELLMAN
Assistant United States Attorneys
333 Las Vegas Blvd., Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

### -o0o-

| | |
|---|---|
| UNITED STATES OF AMERICA | 2:06-cr-0379-LDG-GWF |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE** |
| vs. | |
| ROBERT MYRON LATHAM, | |
| Defendant. | |

CERTIFICATION:    This response is timely filed.

The United States, by and through Gregory A. Brower, United States Attorney, and Nancy J. Koppe and Robert L. Ellman, Assistant United States Attorneys, responds to defendant Robert Latham's sentencing memorandum and motion for downward departure. The defendant asks this Court to find that the statutory mandatory minimum sentence does not apply in this case, and to depart downward from the United States Sentencing Guideline range. The United States asks this Court to follow the statutory authority, the applicable caselaw, and the recommendation of the United States Probation Office.

### OFFENSES OF CONVICTION

The evidence at trial established that, on February 25, 2005, defendant had numerous files in his Limewire share folder that he made available to other Limewire users for purposes of accessing and downloading. The names of these files included numerous known child pornography terms and, by putting them in his share folder, defendant knowingly made or published a notice

1

1  offering to distribute the child pornography images.  On February 25, 2005, defendant knowingly

2  transported child pornography when an FBI agent downloaded child pornography images from

3  defendant's Limewire share folder.

4  On June 1, 2005, law enforcement officers executed a search warrant on the residence of

5  defendant's brother.  The determined the locus of the premises by tracing the Internet Service

6  Provider account associated with the Limewire account.  When they executed the warrant, officers

7  learned for the first time that defendant was living there.  Defendant told them that his computer

8  contained what they were looking for.  A forensic examination of defendant's computer revealed that

9  defendant received and possessed over 600 images of child pornography.  Many of these images

10 were located in well-organized sub-folders that defendant had created.  The location of the child

11 pornography files was "hidden" by placing it within a folder labeled "Cardshop."  The "Cardshop"

12 folder also contained adult pornography within its subfolders.

13 After hearing the evidence at trial, a jury convicted defendant of Notice to Distribute Child

14 Pornography, in violation of Title 18, United States Code, Section 2251(d)(1)(A), Transporting

15 Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(1), Receipt of

16 Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(2), and

17 Possession of Child Pornography, in violation of Title 18, United States Code, Section

18 2252A(a)(5)(B).

19 **POINTS AND AUTHORITIES**

20 **I.    DEFENDANT IS SUBJECT TO A MANDATORY LIFE SENTENCE, UNDER 18,**
21 **U.S.C. § 3559(e), FOR HIS CONVICTION OF NOTICE TO DISTRIBUTE CHILD**
   **PORNOGRAPHY.**

22 Title 18, United States Code, Section 3559(e)(1) states that "[a] person who is convicted of

23 a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the

24 person has a prior sex conviction in which a minor was the victim, unless the sentence of death is

25 imposed."  The statute defines Federal sex offense to include an offense under 18 U.S.C. § 2251.

26 18 U.S.C. § 3559(e)(2)(A).  It further defines prior sex conviction as "a conviction for which the

27 sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense,

28

1   and which was for a Federal sex offense or a State sex offense." 18 U.S.C. § 3559(e)(2)(C). Finally,

2   the statute defines State sex offense as an offense under State law that is punishable by more than

3   one year in prison and consists of conduct that would be a Federal sex offense if federal jurisdiction

4   existed. 18 U.S.C. § 3559(e)(2)(B).

5         Defendant stands convicted of an offense under Section 2251. He has a prior conviction for

6   Sexual Abuse of a Minor in the State of Alaska. This conviction was punishable by more than one

7   year in prison, and would have constituted a Federal offense if federal jurisdiction occurred. 18

8   U.S.C. § 2241(c). *See United States v. Sinerius*, 504 F.3d 737, 744 (9th Cir. 2007). As such,

9   defendant faces a mandatory sentence of life for his conviction on count one, and the United States

10  asks this Court to sentence him accordingly. *See United States v. Johnson*, 495 F.3d 536, 543-44

11  (7th Cir. 2007).

12  **II.    DEFENDANT'S EIGHTH AMENDMENT CLAIM FAILS.**

13        Defendant, a recidivist child sex offender, asks this Court to find that the statutory mandatory

14  minimum sentence as applied amounts to cruel and unusual punishment under the Eighth

15  Amendment. Defendant also asks this Court to accept the incredible premise that viewing child

16  pornography actually *protects* children. The Ninth Circuit and Supreme Court have both

17  conclusively rejected these arguments.

18        Regardless of whether the act of viewing child pornography harms children in the abstract,

19  by creating a demand for the production of child pornography, or otherwise, defendant stands

20  convicted of much more than merely viewing or possessing child pornography. He has also

21  advertised and transported it. "[A]dvertising and distributing child pornography is a significant

22  crime because it 'threaten[s] to cause grave harm to society.'" *United States v. Meiners*, 485 F.3d

23  1211, 1213 (9th Cir. 2007) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) *Harmelin*, 501

24  U.S. at 1002). The distribution of child pornography "feeds an industry that causes physiological,

25  emotional and mental trauma to the child victims." *Meiners*, 485 F.3d at 1213. In *Meiners*, the Court

26  further held that, by "advertising his desire to receive and trade child pornography, Meiners directly

27  encourage[d] the production and distribution of material that is created by abusing children." *Id*.

28

                                                     3

1   As such, the Court held that Meiners' mandatory minimum sentence did not implicate the Eighth

2   Amendment where defendant was convicted of advertising and distributing child pornography

3   images.  *Id.*; *see also United States v. Betcher*, 534 F.3d 820, 827 (8th Cir. 2008) (finding that a 750-

4   year aggregate sentence for producing, receiving and possessing child pornography was reasonable);

5    *United States v. Johnson*, 451 F.3d 1239, 1243-44 (11th Cir. 2006) (upholding recidivist's 140-year

6   sentence for receipt and production of child pornography); *United States v. MacEwan*, 445 F.3d 237,

7   247-48 (3d Cir. 2006) (upholding recidivist's 15-year sentence for receiving child pornography);

8   *United States v. Gross*,  437 F.3d 691, 694 (7th Cir. 2006) (15-year mandatory minimum sentence

9   for distributing child pornography, based on prior convictions for sexual assault of minor and related

10   offenses, did not constitute cruel and unusual punishment in violation of Eighth Amendment).

11        Defendant's Eighth Amendment claim has no footing in fact or law and should therefore be

12   rejected.

13   **III.    THE GUIDELINE ENHANCEMENTS SET OUT IN THE PSR ARE APPLICABLE**
**IN THIS CASE, AND THE COURT SHOULD OVERRULE DEFENDANT'S**
14   **OBJECTIONS.**

15        Defendant makes several objections to the Guideline enhancements set out in the Presentence

16   Report.  These objections are effectively moot in light of the mandatory life sentence; however, the

17   enhancements in the PSR clearly apply.

18        Defendant maintains that his Court cannot apply claims that the five-level enhancements

19   under Guidelines sections 2G2.2(b)(3)(B) and 2G2.2(b)(7)(D) because the jury did not specifically

20   make these findings.  Defendant's argument rests on a misinterpretation and misapplication of

21   *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  The defendant,

22   however, misstates the Supreme Court's finding in *Apprendi*.  The *Apprendi* Court held that the jury

23   finding is necessary only for facts, other than a prior conviction, that increase the penalty for a crime

24   beyond the prescribed statutory maximum.  530 U.S. at 490.  Because the challenged enhancements

25   do not increase defendant's sentence beyond the statutory maximum for any of the crimes of which

26   he was convicted, *Apprendi* simply does not apply, and defendant's argument must fail.

27   . . . .

28

4

1

        **A.     Enhancement for Distribution with Expectation for Thing of Value.**

2            Defendant misstates the enhancement under USSG § 2G2.2(b)(3)(B).  This enhancement

3 applies if the distribution of the child pornography occurred "for the receipt, or expectation of

4 receipt, of a thing of value, but not for pecuniary gain."  Application note 1 states that child

5 pornography is a "thing of value" contemplated in this enhancement.  Testimony at trial established

6 that Limewire is a program used to share and/or trade files, and that defendant stated that he used

7 the Limewire program.  Defendant's share folder clearly demonstrated that he both downloaded and

8 distributed child pornography images.  A defendant expects to receive a thing of value under this

9 enhancement "when he distributes child pornography in anticipation of, or while reasonably

10 believing in the possibility of, the receipt of a thing of value."  *United States v. Geiner*, 498 F.3d

11 1104, 1110 (10th Cir. 2007).  Additionally, some courts have held that, by sharing files on a file-

12 sharing network, a defendant necessarily expects to receive a thing of value (i.e., access to other

13 users' files).  *United States v. Griffin*, 482 F.3d 1008, 1013 (8th Cir. 2007).  In this case, defendant

14 clearly distributed child pornography in expectation of the receipt of a thing of value.  As such, the

15 United States asks this Court to apply USSC § 2G2.2(b)(3)(B).  *See United States v. McVey*,  476

16 F.Supp.2d 560, 563 (E.D.Va. 2007).

17

        **B.     Enhancement for Over 600 Images.**

18            The United States believes that the testimony at trial additionally supports the application

19 of USSG 2G2.2(b)(7)(D), because the offense involved more than 600 images.  However, if the

20 Court so desires, the United States will present testimony from its forensic examiner at sentencing

21 to further prove that this enhancement applies.

22

        **C.     Enhancement for Pattern of Activity.**

23            Defendant claims that the enhancement pursuant to USSG §2G2.2(b)(5) should not apply.

24 In support of his claim, he states that his prior conviction for sexual abuse of a minor occurred in

25 1986.  Defendant's argument fails because no time restriction applies to the enhancement under

26 §2G2.2(b)(5) .

27 . . . .

28

1     Defendant next cites *United States v. Polson*, 285 F.3d 863, 568 (7th Cir. 2002), for the

2  proposition that "sexual abuse or exploitation" does not include trafficking in material relating to

3  the sexual abuse or exploitation of a minor.  Defendant neglects to consider that although the instant

4  case involves trafficking of child pornography, he was also convicted of the advertising statute, 18

5  U.S.C. § 2251(d)(1)(A).  Application Note 1, which also states that "sexual abuse or exploitaion"

6  does not include possession, receipt or trafficking in material relating to the sexual abuse or

7  exploitation of a minor, but it clearly states that "sexual abuse or exploitation" does include conduct

8  described in 18 U.S.C. § 2251.  Thus, this enhancement clearly applies to the instant case.  *See*

9  *United States v. Pabon-Cruz*, 255 F.Supp.2d 200, 210 (S.D.N.Y. 2003) ("the advertising statute

10  bears a different relationship to the purpose of preventing child abuse than does the receipt and

11  distribution statute" because advertising directly encourages production of child pornography).

12         **D.     Enhancement for Obstruction of Justice.**

13     Defendant objects to the 2-level adjustment pursuant to USSG § 3C1.1, claiming that this

14  enhancement cannot apply simply because he was convicted.  This enhancement clearly applies,

15  however; not simply because defendant was convicted, but because he perjured himself before this

16  Court and the jury.

17     "The Guidelines state that perjury is obstruction of justice for enhancement purposes."

18  USSG § 3C1.1, cmt. n. 4(b) (1998).  For a court to find that a defendant obstructed justice through

19  perjury, it must find that (1) the defendant gave false testimony, (2) on a material matter, (3) with

20  willful intent."  *United States v. Garro*, 517 F.3d 1163, 1171 (9th Cir. 2008) (citing *United States*

21  *v. Jimenez-Ortega*, 472 F.3d 1102, 1103).  Obstruction under *Garro* requires little more than what

22  the Court can infer from the guilty verdicts wherein the jury necessarily found defendant's testimony

23  was false.

24     Defendant's testimony was clearly willful: he pointedly denied having ever seen any child

25  pornography before viewing it at trial, and even pretended to be offended by it.  He resorted to more

26  and more untenable theories and explanations–the least tenable of which he offered through his own

27  false testimony.  The evidence and circumstances of the defendant's testimony point squarely to the

28

6

1   conclusion that he committed perjury in an effort to avoid conviction.

2   First, the evidence strongly suggests the falsity of defendant's testimony.  The unchallenged
3   forensic computer evidence established that someone in the residence downloaded the images to
4   *defendant's* computer (which he used exclusively) and nobody else's.  Defendant told the searching
5   agents that they would find what they were looking for on his computer, having read the search
6   warrant which stated that the search was for child pornography.  Defendant's sister-in-law did not
7   know how to use Limewire, and defendant's brother had his own computer which did not contain
8   any child pornography.  Nobody else lived in the home.  Defendant acknowledged possession of
9   adult pornography, which happened to be hidden in the same folder where the child pornography
10   was found.  This folder could not be accessed by anyone remotely unless they had commercially
11   unavailable hacking software.  As defendant's own expert conceded, hackers as a rule use their skills
12   for profit by doing things such as hacking into secured networks of financial institutions.

13   But the government is not asking this Court to rest its perjury finding on the mere
14   inconsistency between defendant's testimony and the jury's verdict.  Rather, the obstruction
15   enhancement must rest on this Court's conclusion, based on its own observation of defendant's
16   testimony, that he was lying to avoid conviction.

17   The general indications were abundant.  Defendant was evasive, defensive and combative
18   during cross-examination.  He readily supplied details that furthered his defense theories, while
19   failing to remember any details that would refute the story.  He injected improper statements
20   designed to garner sympathy, such as the fact that he had served in the Marine Corps, that he
21   purported to love his country, and that he moved to Las Vegas to care for his ailing brother.  He
22   readily heaped blame for his crimes on unlikely third parties, such as an unknown hacker, his
23   nephew, and his nephew's friends.  These are not the traits of a witness who wants to focus on the
24   truth.

25   As a specific ground for a perjury finding, this Court should consider the false alibi
26   testimony, which stands out as the most flagrant, elaborate and bald-faced lying in defendant's
27   testimony.  The alibi was that he was in Liberal, Kansas rather than Las Vegas on the dates when

28

7

the FBI computer crimes unit discovered the files being made available through Limewire on defendant's computer.

The first indication that defendant's alibi testimony was false is the fact that the alibi did not surface until direct examination–after some three years of pretrial litigation. Clearly, if the alibi had any truth to it, he would have revealed it earlier and exonerated himself. Instead, he offered it during trial, when it was too late for the government to investigate.

Set against this backdrop, defendant attempted to imbue his false, wholly uncorroborated alibi testimony with some plausibility by fending off cross-examination with additional lies. Confronted with questions designed to probe the documentation one would expect a two-week trip to generate, defendant testified that–despite his unemployment and poverty–he funded his trip with $1500 in cash. To further explain the untenable absence of a paper trail, he testified that he had $1500 in cash at his disposal without the need for making a bank withdrawal. He avoided the need to produce hotel receipts by swearing that he slept two winter nights in Colorado (on the outbound and return trips) in his pickup truck. He claims to have spent two weeks in Kansas without meeting or seeing anyone other than the woman he purported to have been visiting. Only a hopelessly naive juror, or one irretrievably biased in favor of acquittal, would have ascribed any truthfulness to this shameless testimony. It was outright perjury. The 2-level enhancement for obstruction clearly applies.

## IV.   DEFENDANT HAS NOT OFFERED REASONS TO JUSTIFY A VARIANCE FROM THE SENTENCING RECOMMENDATION MADE BY PROBATION.

Defendant asks this Court for a variance from the Guideline range, because he claims that he suffers from poor health and that he has endured a difficult pretrial detention. Like the prior arguments, these arguments are irrelevant due to the mandatory life sentence. Nonetheless, the United States asks this Court to deny these requests on their merits as well.

In *United States v. Carty*, 520 F.3d 984 (9th Cir.2008), the Ninth Circuit set out the factors, as well as the framework, for how a district court should approach sentencing. The Court stated that the "overarching statutory charge for a district court is to 'impose a sentence sufficient, but not

1    greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and

2    provide just punishment; to afford adequate deterrence; to protect the public; and to provide the

3    defendant with needed educational or vocational training, medical care, or other correctional

4    treatment." *Id*., at 991, quoting 18 U.S.C. § 3353(a) and (a)(2).

5       The Court stated that "[a]ll sentencing proceedings are to begin by determining the

6    applicable Guidelines range.  The range must be calculated correctly."  *Id.*  The Sentencing

7    Guidelines are " the starting point and the initial benchmark," *Gall v. United States*, 128 S.Ct. 586,

8    596 (2007), and are to be kept in mind throughout the process. *Id*., at 596-97, n. 6. The *Carty* Court

9    held that, after the determination of the proper Guideline range, the parties must be given the

10   opportunity to argue for the sentence that they believe is appropriate.  *Carty*, 520 F.3d at 991.

11      The *Carty* Court stated that, after determining the proper Guideline range, the district court

12   should then consider the 3553(a) factors to determine if these factors support the sentence suggested

13   by the parties.  The district court "should consider the nature and circumstances of the offense and

14   the history and characteristics of the defendant; the need for the sentence imposed; the kinds of

15   sentences available; the kinds of sentence and the sentencing range established in the Guidelines;

16   any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted

17   sentence disparities among defendants with similar records who have been found guilty of similar

18   conduct..." *Id*.  Finally, once the sentence has been selected by the district court, the "district court

19   must explain it sufficiently to permit meaningful appellate review." *Id*., at 992.

20      The United States Probation Department has determined that the applicable Guideline range

21   is a life sentence.  The United States agrees that the Probation Department has accurately determined

22   the Guideline range, as well as defendant's criminal history.  Further, the statute requires a sentence

23   of life.

24   . . . .

25   . . . .

26   . . . .

27   . . . .

28

1

### A.    Seriousness of the Crime.

2      The seriousness of the crime is obvious.  Child pornography crimes are, by statute, crimes

3  of violence.  Title 18, United States Code, Section 3156(a)(4).  *See also United States v. Fraser*, 152

4  F.Supp.2d 800, 805 (E.D.Pa., 2001) (crimes involving sexual exploitation of children - in this case,

5  a non-production child pornography crime - are crimes of violence).  Additionally, in terms of the

6  harm done to the children depicted in child pornography images, the Ninth Circuit has determined

7  that the "distribution of photographs and films depicting sexual activity by juveniles is intrinsically

8  related to the sexual abuse of children. . . . [T]he materials produced are a permanent record of the

9  children's participation and the harm to the child is exacerbated by their circulation."  *United States*

10  *v. Boos*, 127 F.3d 1207, 1211 (9th Cir. 1997), *quoting New York v. Ferber*, 458 U.S. 747, 759 102

11  S.Ct. 3348, 3355, 73 L.Ed.2d 1113 (1982).

12      Defendant did not advertise, distribute, receive and possess child pornography in a vacuum.

13  By accessing the Internet in search of child pornography, he directly contributed to the demand for

14  this harmful contraband.  As with lawful commerce, increases in demand cause increases in

15  production and supply.  In the case of child pornography, supply involves more children being

16  molested and more images being created.  *United States v. Adams*,343F.3d 1024, 1032 (9th Cir.

17  2003); 136 Cong. Rec. at S4730 ("those who possess and view child pornography encourage its

18  continual production and distribution").  *See also S.Rep. 95-438 at 5* (1977) (child pornography

19  highly organized multimillion dollar industry operating on nationwide scale).

20      Additionally, defendant's advertisement, transportation, receipt and possession of already-

21  produced child pornography continually re-victimizes the child victims portrayed in the images.

22  Child pornography, reduced to its essence, consists of photographs of a crime scene.  When these

23  pictures are distributed over the Internet, and when people such as the defendant seek them out and

24  create a demand for them, the victims are re-victimized.  They cannot heal.  The images victimize

25  them for the rest of their lives.  *United States v. Stevens*, 197 F.3d 1263, 1267 (9th Cir. 1999).  *See*

26  *also Ferber*, 458 U.S. at 759 n. 10, 102 S.Ct. at 3348 ("[b]ecause the child's actions are reduced to

27  a recording, the pornography may haunt him in future years, long after the original misdeed took

28

1   place.  A child who has posed for a camera must go through life knowing that the recording is

2   circulating within the mass distribution system for child pornography"); *United States v. Richardson*,

3   238 F.3d 837, 839 (7th Cir. 2001) ("Concern with the welfare of the children who are used to create

4   pornography is part of the public concern over child pornography, ... and this makes the receiver a

5   greater malefactor than the possessor");  *Boos*, 127 F.3d at 1210 (harm caused by distribution of

6   child pornography is visited upon child or children used in production of the pornographic

7   materials).

8          Defendant cannot have committed these crimes without appreciating at some level the

9   production of the images in mind.  Courts and Congress have recognized that defendants often show

10  child pornography to other child victims as part of the grooming process to convince them that

11  having sex with adults is normal and acceptable, even maintaining that the children in the images

12  are having fun.  *United States v. Maxwell*, 386 F.3d 1042, 1065 n. 22 (11th Cir. 2004) (quoting

13  Congress' findings that child pornography is often used as part of method of seducing other children

14  into sexual activity)  Courts have also recognized that adults interested in child pornography often

15  molest children, as was the case with defendant by virtue of his prior conviction.  *See Maxwell*, 386

16  F.3d at 1059 ("the existence of and traffic in child pornographic images ... inflames the desires of

17  child molesters, pedophiles, and child pornographers who prey on children, thereby increasing the

18  creation and distribution of child pornography and the sexual abuse and exploitation of actual

19  children who are victimized as a result of the existence and use of these materials").

20        **B.      History and Characteristics of Defendant.**

21         Defendant's history involves both the use of illegal drugs and the sexual abuse of children.

22  He was convicted of molesting his step-daughter.  During the three years that molestation occurred,

23  he also furnished his step-daughter with cocaine and marijuana.  Additionally, defendant has a

24  conviction for delivering marijuana to two minor males.  Indeed, when police executed the search

25  warrant in this case, they found marijuana in defendant's residence.  Defendant also has a prior

26  conviction for assault, and another for threatening violence against IRS officers.

27  . . . .

28

1    Defendant asks this Court to give him a lower sentence because of his alleged health

2    problems and a feared vulnerability in prison due to the nature of the crimes he committed.  This

3    Court has the discretion not to vary on alleged physical ailments that have not been proven to exist.

4    *United States v. Estrada-Plata*, 57 F.3d 757, 761 (9th Cir. 1995). Here, defendant's alleged ailments

5    are more convenient than real, and not so significant as to require a variance.  Defendant's health

6    was certainly good enough for him to care for his parents and then his brother, and for him to be

7    employed as a long-distance truck driver.  Further, defendant appeared healthy in court, and had no

8    problems that affected him in the courtroom.  As such, the United States submits that this Court

9    should not grant a variance on the basis of alleged ailments.

10    Finally, defendant asks this Court to reduce his sentence based on his pretrial confinement

11    at the North Las Vegas Detention Center.  In support of this request, he states:

12    [T]he Honorable District Court Robert C. Jones granted Kevin Curtin a multi-level departure because he spent many months in isolation at the North Las Vegas

13    Detention Center under onerous conditions while awaiting trial.  Mr. LATHAM'S conditions at the North Las Vegas Detention Center duplicate the conditions of Mr.

14    Curtin.

15    *See* defendant's sentencing memo, at 8.  In fact, it was Judge Dawson who sentenced Kevin Curtin.

16    More importantly, although Curtin did raise the issue of a downward departure based on his pretrial

17    detention, Judge Dawson specifically found that Curtin's pretrial detention did not constitute a basis

18    for departure.  He did *not* grant him a departure of even one level, much less a multi-level departure.

19    In any event, defendant has offered no proof of unacceptable conditions at the North Las Vegas

20    Detention Center.

21    **C.    Other Factors.**

22    The other factors under 3553(a), as cited by the Court in *Carty*, particularly the need to avoid

23    unwarranted sentence disparities among defendants with similar records who have been found guilty

24    of similar conduct, also lend credence to the proposition that a Guideline sentence is sufficient, but

25    not greater than necessary, in this case.  As such, the United States asks this Court to follow the

26    recommendation of the United States Probation Office in fashioning its sentence for defendant.

27    . . . .

28

12

1

**V.      CONCLUSION**

2          Defendant faces a mandatory sentence of life for his conviction of notice to distribute child

3  pornography, pursuant to 18 U.S.C. § 3559(e).  Further, the Ninth Circuit has already addressed

4  defendant's Eighth Amendment argument addressing the statutory mandatory minimum and has

5  denied it.   Finally, although defendant's arguments regarding the guideline applications and

6  sentencing variances are immaterial in light of the mandatory life sentence, those arguments must

7  fail as well.  As such, the United States asks this Court to sentence defendant to the mandatory life

8  sentence on count one, as well as to the sentences recommended by Probation on the other counts

9  of conviction.

10          Dated this 11th day of December, 2008.

11                                                              Respectfully submitted,

12
                                                               GREGORY A. BROWER
13                                                             United States Attorney

14
                                                               /s/
15
                                                               NANCY J. KOPPE
16                                                             ROBERT L. ELLMAN
                                                               Assistant United States Attorneys
17

18

19

20

21

22

23

24

25

26

27

28

13

**CERTIFICATE OF SERVICE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|           Plaintiff, | )           2:06-cr-00379-LDG-GWF |
| | ) |
| vs. | ) |
| | ) |
| ROBERT MYRON LATHAM, | ) |
| | ) |
|           Defendant. | ) |
| _____ | ) |

      The undersigned hereby certifies that she is an employee in the office of the United States Attorney for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

      That on December 11, 2008, she served a copy of the attached **UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE**, by electronic service through CM/ECF.

      Addressee:      Terrance Jackson, Esq.


                                            /s/ Nancy J. Koppe
                                         NANCY J. KOPPE